UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ISOM, | ) | Case No. 4:04 CV 1130 |
| | ) | (Related Case No. 4:02 CR 013) |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |

On January 9, 2002, a federal grand jury indicted William Isom (Isom) for violating 21

U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, conspiracy to attempt possession with the intent to

distribute two kilograms of cocaine.  (R. 1: Indictment).  On May 28. 2002, the government,

pursuant to 21 U.S.C. § 851, notified Isom of its intent to seek a statutorily enhanced sentence

based on Isom's prior felony drug conviction.  (R. 19: Notice).

After a one day bench trial on July 8, 2002, the federal district court found Isom guilty,

and on September 6, 2002, sentenced Isom to 121 months incarceration, followed by eight years

of supervised release, and a special assessment of $100.  (R. 39: Judgment and Commitment

Order).  Isom filed a timely notice of appeal on September 16, 2002.  (R. 40: Notice of Appeal).

The Sixth Circuit Court of Appeals in an unpublished opinion on August 8, 2003, affirmed the

conviction and sentence.  *United States v. Isom*, 72 Fed. Appx. 372, 2003 WL 21920026 (6th Cir.

4:04 CV 1130                                        2

2003).[1] Isom is now once again challenging his conviction and sentence, but this time collaterally under 28 U.S.C. §2255.

## STATEMENT OF THE FACTS

During February of 2001, Drug Enforcement Agency (DEA) officers in Youngstown, Ohio, were contacted by DEA officers from Houston, Texas, concerning a cooperating witness named Cheryl Newsome (Newsome).  (Rapp, Trial Tr. At 69-70).  Agents in Houston informed the Youngstown office that Newsome had information concerning Youngstown-based drug customers and was willing to cooperate with the authorities.  *Id.*  Agent Rapp of the Youngstown DEA office met with Newsome on February 12, 2001.  *Id.*  Newsome identified her Youngstown-based drug customers, including Isom, and she agreed to cooperate with law enforcement officials.  *Id.*  Under Rapp's direction, Newsome met with Isom later in February 2001.  (Newsome, Tr. at 21).  During the meeting, Newsome informed Isom that she was back in town and would be selling cocaine in the near future.  *Id.*

Newsome returned to Youngstown again in March of 2001 and met with Isom.

---

[1] The issues on appeal were:

> 1.  The evidence was insufficient to prove the intent and substantial step elements of attempt to purchase cocaine;
>
> 2.  the district court erred by imposing an enhancement for obstruction of justice;
>
> 3.  the district court erred in not applying a three-level reduction under the federal sentencing guidelines; and
>
> 4.  the district court abused its discretion by imposing a consecutive, rather than concurrent, sentence to his state sentence.

4:04 CV 1130                                        3

(Newsome. Tr. At 22-23).  During a March 6, 2001, meeting, Newsome wore a body wire to

record her conversation with Isom.  *Id*.  At the meeting, Isom inquired about the quality of the

cocaine by asking if it was "white-white."  (Tr. at 26).  After some price negotiations, Isom

agreed to purchase one kilogram of cocaine for $23,000, but the sale was never completed.  (*Id*.

at 29-30).


After her March 6, 2001, meeting with Isom, Newsome returned to Texas, but she

remained periodically in communication with Isom.  (*Id.* at 30-31).  On July 23, 2001, Newsome

returned to Youngstown and met with Isom at his sister's house.  (*Id*. at 32-33).  Newsome again

wore a body wire to record her conversation with Isom.  *Id*.  After some more price negotiations,

Isom agreed to purchase four kilograms of cocaine for $22,000 each.  (*Id*. at 36-37).  Newsome

and Isom agreed to meet the next day to complete the transaction.  (*Id*. at 38-39).


On July 24, 2001, Newsome, once more wearing a body wire, met Isom.  *Id*.  During the

meeting, Isom stated that he could only buy one kilogram of cocaine for $22,000, but he could

possibly purchase more cocaine the next day.  (*Id*. at 40-41).  Due to the fact that Isom did not

have the $22,000 on-hand Newsome did not give him the fake kilogram of cocaine[2].  (*Id*. at 43-

44).  The two parties agreed, once more, to meet the following day.  (*Id*. at 45).

---

[2]The agents had given Newsome a fake substance packaged like a kilogram of cocaine to show Isom.
(Newsome, Tr. at 43).

4:04 CV 1130                                        4

On July 25, 2001, Newsome called Isom before their meeting.  *Id*.  The agents made a
tape recording of this call.  *Id*.  During this conversation, the parties discussed the amount of
cocaine that was to be sold.  Eventually, Isom agreed to purchase two kilograms of cocaine for a
grand total of $44,000.  (*Id*. at 49).

Later in the day on July 25, 2001, Isom and Newsome met at a store parking lot.  *Id*.
Newsome again wore a body wire while agents video taped the meeting.  *Id*.  Isom disliked how
things looked and instructed Newsome to follow him to his sister's house to carry out the
transaction.  *Id*.  Due to safety concerns, Agent Rapp instructed Newsome not to follow Isom.
(Rapp, Tr. at 77).  Rapp contacted the Austintown Police and asked them to stop Isom's vehicle.
Upon searching Isom's automobile, the police officers recovered a bag which contained $44,020
in cash and four razor blades in Isom's pocket.  (*Id*. at 81-82).  Isom told his parole officer, Keith
Yauger, that he had the money because he was planning to buy a car.   (Yauger, Tr. at 106-107).
DEA agents took Isom back to his home to conduct a consent search.  (Rapp, Tr. at 83).

While the other agents searched Isom's house, DEA agent, Rapp, interviewed Isom.  (*Id*.
at 84).  Isom admitted that he intended to buy a kilogram of cocaine from Newsome, but he was
making the purchase on behalf of a third party.  *Id*.  In addition, Isom also acknowledged
possessing the $44,000.  (*Id*. At 85-86).  At trial, Isom admitted to making these statements.
(Isom, Tr. at 15-16).

4:04 CV 1130                                    5

*Proceedings Under 28 U.S.C. §2255:*

Isom initiated federal collateral review under 28 U.S.C. §2255 with his motion to vacate,

set aside or correct sentence filed on June 14, 2004. (See ECF #1).[3]  He filed a supplemental

memorandum on July 6, 2004 (EC F #9), and filed an amended supplemental motion to vacate

on August 4, 2004 (under the original criminal case, 4:02 CR 013, ECF #58). Isom raised

arguments in his July 6, 2004 "supplemental memorandum" that were a bit unclear.  He

identified his central issue as:

> Whether Petitioner's Sixth Amendment Rights in *Apprendi* challenge or
> his federal sentencing guidelines were not violated by the sentencing court
> right to effective assistance within the meaning of *Strickland v.
> Washington*. . .

(Memorandum, p. 4, ECF #9).  In this brief, Isom delved into what he perceived to be an error

under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

---

[3] Isom's six grounds originally presented in June 2004 were:

ISSUE 1:  Whether William Isom's counsel was constitutionally effective regarding Mr. Isom's offense of conspiracy to possess with intent to distribute cocaine, if the evidence in this case was sufficient enough for the alleged unconstitutional conviction?

ISSUE 2:  Whether the United States District Court erred by enhancing William Isom's offense level by two (2) levels for obstruction of justice pursuant to U.S.S.G. 3.C1.1?

ISSUE 3:  Whether Counsel was constitutionally effective by failing to object to the trial court's abuse of discretion in ordering consecutive illegal sentences?

ISSUE 4:  Whether William Isom's Counsel was constitutionally effective by improperly failing to challenge the interstate nexus on Mr. Isom's drug charge:

ISSUE 5:  Whether William Isom's Counsel was constitutionally ineffective by improperly failing to challenge certain inaccuracies in an affidavit that failed certain inaccuracies in an affidavit that failed to support the search warrant issued for Petitioner's residence?

ISSUE 6:  Whether William Isom's Counsel was constitutionally ineffective by failure to raise a Batson challenge during jury selection?

4:04 CV 1130                                    6

Isom's original "supplemental" argument was made with reference to *Apprendi*.  In *Apprendi* the court held that "[o]ther than the fact of a prior conviction, any fact that increases a penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362-63; quoted in *U.S. v. Booker*, 543 U.S. 220, 228-29, 125 S.Ct 738, 746, 160 L.Ed.2d 621 (2005).  At the time immediately following *Apprendi*, the courts equated the maximum statutory penalties authorized by Congress to the statutory maximum sentence. *E.g., U.S. v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *U.S. v. Koch*, 383 F.3d 436, 438 (6th Cir. 2004) ("Koch received a cumulative sentence of 248 months.  Each of Koch's sentences fell below the (congressional) statutory maximum."); *U.S. v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002) (noting that *Apprendi* "applies only where the finding 'increases the penalty . . . beyond the prescribed statutory maximum.'"); and see *Simpson v. U.S.,* 376 F.3d 679, 681 (7th Cir. 2004); *Varela v. U.S.*, 400 F.3d 864, 866 (11th Cir. 2005); *U.S. v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000); *U.S. v. O'Flanagan*, 339 F.3d 1229, 1232 n. 2 (10th Cir. 2003).  As *Helton* illustrates, this decision and others prognosticated from *Harris v. U.S.*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), that "[u]nder *Harris*, once the jury has determined guilt, the district court may sentence the defendant to the statutory minimum, the statutory maximum, or anything in between based on its (proper) application of the Guidelines and its (permissible) preponderance-of-the-evidence findings under the Guidelines.  So long as the judge does not sentence the defendant beyond the maximum levels authorized by the statute under which the defendant was convicted, *Harris* makes clear that the district court does not run afoul of *Apprendi* or the constitutional rights that it protects."  See

4:04 CV 1130                               7

*Helton*, 349 F.3d at 299.  Given that Isom was charged with conspiracy under 21 U.S.C.

§841(b)(1)(B) for conspiracy to distribute two kilograms of cocaine and had a prior conviction,

the statutory sentence range was a term of imprisonment "which may not be less than 10 years

and not more than life imprisonment."  Prior conviction was a factor expressly permitted under

*Apprendi*.  Obviously the sentence of 121 months which calculates to 10 years and 1 month falls

within the prescribed statutory sentence.  There was no merit to Isom's *Apprendi*-based

argument.[4]


In his amended supplemental motion filed in August 2004, Isom maintained without

explanation that his sentence was imposed in violation of  *Blakely v. Washington*, 542 U.S. 296,

124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).The rule which developed subsequent to Isom's

conviction in *Blakely* was that "the 'statutory maximum' for *Apprendi* purposes is the maximum

sentence the judge may impose *solely on the basis of the facts reflected in the jury verdict or*

*admitted by defendant* (emphasis in original)."  *Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537,

quoted in *Booker*, 543 U.S. at 228, 125 S.Ct. at 746-47. Again at the time there would have been

no perceived error under *Blakel*y. See *United States v. Stafford,* 258 F.3d 465, 475-76 (6th

Cir.2001) (holding that defendant's failure to object to presentence report operates as an

admission as to drug types and quantities set forth in presentence report).  Furthermore, until

*U.S. v. Booker* was decided, the Sixth Circuit had held that *Blakely* had no application to the

federal sentencing guidelines. See *United States v. Koch,* 383 F.3d 436 (6th Cir.2004)( The

Court decided *en banc* that *Blakely* does not apply to the federal sentencing guidelines.). Prior to

---

[4] Isom also presented an ill-defined argument of ineffective assistance of trial counsel. Given that there was
no sentencing error under Apprendi, counsel's performance was not deficient for not objecting.

4:04 CV 1130                                      8

*Booker*, similar thinking was expressed in other circuits.  See *U.S. v. Cordoza-Estrada*, 385 F.3d 56 (1st Cir. 2004); *U.S. v. Mincey*, 380 F.3d 102 (2d. Cir. 2004); *U.S. v. Hammond*, 381 F.3d 316, 360 (4th Cir. 2004); *U.S. v. Pineiro*, 377 F.3d 464 (5th Cir. 2004); *U.S. v. Reese*, 382 F.3d 1308 (11th Cir. 2004).  The point being made here is that *Blakely* was not a precursor to *Booker*.  See *Valentine v. U.S.*, 488 F.3d 325, 2007 WL 1387906  (6th Cir 2007).  Of course this changed in *U.S. v. Booker, supra*, where Justice Breyer delivered an opinion of the court which held that the Sixth Amendment requirement the jury finds certain sentencing facts was incompatible with the Federal Sentencing Act and thus requires severance of the Act's provisions that make the guidelines mandatory.  *Booker*, 543 U.S. 220 at 245-262, 125 S.Ct. at 756-766.  As a result of *Booker* numerous federal defendants have been required to be resentenced.  See *U.S. v. Brika*, 416 F.3d 514 (6th Cir. 2005) (vacating sentence and remanding for resentencing in compliance with *Booker*).


On May 11, 2005, Isom moved to withdraw his original §2255 pleadings and substitute a new motion to vacate (ECF #13). In briefing his proposed new ground, Isom relies on the Supreme Court cases of *Apprendi v. New Jersey*, *supra*; *Blakely v. Washington*, *supra,* and *U.S. v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005).   The proposed ground reads, "5th and 6th Amendment Violations"  (See motion to withdraw ECF #13-1), but  Isom clarifies his intent in his supporting memorandum where he argues  that he wishes to amend his motion to reflect a sole ground of:

4:04 CV 1130                                              9

> Defendant was denied his 5th and 6th Amendment Rights under the
> Constitution when his sentence was enhanced beyond the statutory
> maximum by facts not found by a jury, not admitted to, and not found by
> any trier of fact beyond a reasonable doubt.

(Isom's Memorandum pg. 25, ECF #13-2).

Isom argues in his supporting brief that his sentence was based on findings from the presentence investigation report that he was responsible for more than 2 kilograms of cocaine which provided an offense base level of 28, and that he had obstructed justice causing an increase of 2-levels under U.S.S.G.§3C1.1, because the court found he had perjured himself at trial. (Isom's Memorandum p. 25). He claims that there had not only been a violation of this rights under the Sixth Amendment pursuant to *Apprendi*, *Blakely* and *Booker*, but that Fifth Amendment rights to due process were violated by not requiring  findings of fact to be made beyond a reasonable doubt. Isom concludes that the court had no choice legally other than to sentence him at offense level 12 for a minimal quantity of drugs which would equate with a sentence range of 15 to 21 months (Isom's Memorandum p.28).

In his memorandum Isom compares himself to *Booker's* companion petitioner, Fanfan, who was charged with conspiracy to distribute and possess at least 500 grams of cocaine convicted by a jury which answered affirmatively to the question whether the amount of cocaine was 500 or more grams, and that based on those factors alone the sentencing guidelines would indicate a period of imprisonment for 78 months.  *Booker*, 543 U.S. at 228, 125 S.Ct. at 747. Although Fanfan had been involved in a drug conspiracy involving 2.5 kilograms of cocaine

4:04 CV 1130                                        10

powder and 261.6 grams of crack cocaine, the federal district court interpreted *Blakely* as

prohibiting a sentence based on any factors beyond those of any jury verdict in the case.  *Id.*

Based on this line of reasoning, Isom argues that the court would have no choice to sentence

defendant to the most minimally recognized quantity which the guidelines would equate to an

offense level 12 and under category 3 would support a maximum sentence of 15 to 21 months.

(Memorandum in Support, pg. 28, ECF 13-2).   This argument is neither firmly grounded in

*Apprendi, Blakely*, or for that matter in *Booker*.  This argument is based on a misinterpretation of

*Blakely*, which was vacated and remanded.  See *Booker*, 543 U.S. at 221, 125 S.Ct. at 741-42

(vacating and remanding No. 04-105).


*Relation back under Fed R. Civ. P. 15(c):*

        The government opposes this proposed substitution contending it is both untimely and

fails to relate back to the original pleadings. (Government's Response, ECF# 14). Isom's

proposed  substituted ground does relate back to the original pleadings filed in this case.  Rule

15(c) of the Federal Rules of Civil Procedure governing amendment permits substitution with

untimely arguments when the subsequent pleading relates back to the original.  See *Mayle v.*

*Felix*, 545 U.S. 644, 125 S.Ct. 2562 (2005) (Rule 15(c) applies to §2254 proceedings), and see

*U.S. v. Hicks*, 283 F.3d 380, 383 (D.D.C. 2002); *U.S. v. Expinoza-Saenz*, 235 F.3d 501, 505 (10th

Cir. 2000); *U.S. v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000). A claim raised in a motion to

amend a Section 2255 motion filed after the expiration of the one-year limitation period is

deemed to have been filed within the one-year period for filing such a motion only if the claim

"relates back" to the petitioner's original Section 2255 motion under Fed. R. Civ. P. 15 (c).  *See*

4:04 CV 1130                                                11

*United States v. Hicks*, 283 F.3d 380, 387-88 (D.C. Cir. 2002).  A claim raised in the amended

pleading "relates back" to the original pleading only if it "arose out of the conduct, transaction,

or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P.

15(c)(2).  The mere fact that amended claims evolve from the same trial as the original motion

does not equate that the amended claims necessarily relate back for the purposes of Fed. R. Civ.

P. 15(c).  *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000); *Davenport v. United States*,

217 F.3d 1341, 1345-46 (11th Cir. 2000); *United States v. Espinoza-Saenz*, 235 F.3d 501, 505

(10th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337-38 (3d Cir. 1999).   The questions

become whether Isom's new arguments are materially different and distinct from his original

arguments, or whether his new claim advances an entirely new legal theory that arises from an

entirely different set of facts and type of conduct.  *Hicks*, 283 F.3d at 389.


The government's objections to substitution are refuted in part by its own August 2004

response in expending nearly seven pages on the subject of how *Apprendi* was "extended" in

*Blakely* and that *Blakely* would  not have retroactive effect.  (Answer, pg. 15-23, ECF #12).[5]  It

appears that the government perceived that Isom was raising a sentence enhancement

*Apprendi/Blakely* issue in the timely filed papers in 2004.  No appellate court decision on the

issue of a *Booker* claim relating back to original *Apprendi* and *Blakely* claims, however,  appears

to exist, but in *Mayle, supra*, the Supreme Court appeared to approve relation back, "when the

new claim is based on the same facts as the original pleading and only changes the legal theory."

*Id.*, 545 U.S. at 664, n. 7, 125 S.Ct. at 2575 n. 7, quoting 3 J. Moore, et al., *Moore's Federal*

---

[5] See *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 1437 L.Ed.2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

4:04 CV 1130                                        12

*Practice* §15.19[2], p. 15-82 (3d ed. 2004).  The May 2005 amendment does relate back, but it

essentially raises the same issues raised in the 2004 papers, and as shall be explained, granting

leave to amend would be futile because even assuming that the new ground relates back for Rule

15(c) purposes, Isom relies upon caselaw, as shall be explained,  that has no retroactive effect.

Consequently, leave to amend has been denied.


*Timeliness of May 2005 substitution:*

      Timeliness is gauged under a "1-year period of limitation"  which runs from the latest of:

        (1) the date on which the judgment became final by the conclusion of
direct review or the  expiration of the time for seeking such review;

        (2) the date on which the impediment to filing an application created by
State action in violation of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing by such State action;

        (3) the date on which the constitutional right asserted was initially
recognized by the Supreme Court; if the right has been newly recognized
by the Supreme Court and made retroactively applicable to cases on
collateral review; or

        (4) the date on which factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

    (28 U.S.C. §2255 ¶6).

    Isom's conviction had become final on November 6, 2003, 90 days after the Sixth Circuit

Court of Appeals denied his appeal on August 8, 2003.  See *Clay v. U.S.*, 537 U.S. 523, 524, 123

S.Ct. 1072, 155 L.Ed.2d 88 (2003)( setting out additional 90 day time allowance).  The

government concedes that Isom's original pleadings were timely filed prior to the  November

2004 expiration of § 2255 ¶ 6 (1)'s "1-year period of limitation" which ran from "the date on

which the judgment became final by the conclusion of direct review."  The government maintains

4:04 CV 1130                                    13

that under §2255 ¶6 (1) Isom's proposed May 2005  substitution is approximately six months too late.


*Equitable Tolling:*

Isom counters that his proposed ground which alleges Fifth and Sixth Amendment violations is not time-barred by virtue of equitable tolling and 28 U.S.C. §2255 ¶6(3). First with respect to equitable tolling, Isom argues that he should be permitted to amend to correct a manifest miscarriage of justice.  (Isom's Traverse, p. 3-4 (ECF #15).  Isom appears to raise the gateway argument recognized in *Souter v. Jones*, that an otherwise time-barred petition should be allowed to pass through the gateway and present the merits of the underlying constitutional claims to correct a manifest miscarriage of justice.  *Id.*, 395 F.3d 577, 602 (6th Cir. 2005).  This form of equitable tolling, though, is premised on the Eighth Amendment protection against imprisonment of the "actually innocent" because it is "far worse to convict an innocent man than to let a guilty man go free." *Id.*, 395 F.3d at 602 & n.1; *Schlup v. Delo*, 513 U.S. 298, 325, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  Isom's proposed ground based on *Blakely* and *Booker* shares nothing with an assertion of actual innocence. In fact Isom under his proposed argument challenges only the sentence as based on fact-finding beyond *Blakely*'s restrictions. Isom does not maintain actual innocence but that the presentence investigative report relied on sentencing factors outside of those from trial or his admissions.  Hence Isom raises no basis for equitable tolling as a gateway for amending his motion to vacate sentence.

4:04 CV 1130                                14

*Booker/Blakely does not have retroactive application for purposes of §2255 ¶6 (3):*

Isom's argument that his petition is timely pursuant to §2255 ¶6(3) fails because *Blakely*, *supra*, and  *Booker* have not been made retroactively applicable to cases on collateral review. Isom relies on the Eleventh Circuit's decision which was affirmed in *Dodd v. U.S.* to read §2255 ¶6(3) as "the applicant has one year from the date on which the right he asserts was initially recognized by the Court." *Id.*, 545 U.S. 353, 357, 125 S.Ct. 2478, 2482, 162 L.Ed.2d 343 (2005). However, Isom contradicts himself in arguing that *Blakely* is not a new rule, but only a restatement of precedent going back to *Jones v U.S.* 523 U.S. 227 (1999)(Isom's Memorandum p.5, ECF # 13-2). Since Isom contends that his *Booker* argument was first recognized in 1999, then he certainly cannot under his thinking be rescued by §2255 ¶6 (3).


Isom's reasoning is erroneous, but in any event, the second equally critical portion of §2255 ¶6 (3), requires that the right must be, "made retroactively applicable to cases on collateral review."  The parties have expended much effort in addressing the issue of retroactive application of  *Apprendi, Blakely,* and *Booker v. U.S.*.  Circuit precedent, though, is now absolutely clear that the Sixth Amendment principles addressed in these cases are procedural rules which do not have retroactive effect in collateral review of convictions which became final prior to their announcement.  See *Goode v. U.S.*, 305 F.3d 378 (6th Cir. 2002), *cert. denied*, 537 U.S. 1096 (2002); *Humphress v. U.S.*, 398 F.3d 855 (6th Cir. 2005), *cert. denied*, - U.S. -, 126 S.Ct. 199, 163 L.Ed.2d2d 190 (2005); *Valentine v. U.S.*, 488 F.3d. 325, 2007 WL 1387906 (6th Cir. 2007). Granted, Isom's conviction did not become final until 2003, subsequent to the Supreme Court's decision in *Apprendi*.  However, as explained in *Valentine v. U.S.*,  *Blakely*  and *Booker* have no

4:04 CV 1130                                    15

retroactive application  on collateral review of convictions that had become final subsequent to

the Supreme Court's announcement in *Apprendi*, but prior to these two decisions.  *Valentine,*

2007 WL 1387906, at *2-4. Isom's brief in support of amending his §2255 motion demonstrated

that he has some knowledge of the concept of retroactive and non-retroactive application of

subsequent changes in the law. The Sixth Circuit has found that *Blakely* and *Booker* have no

retroactive application on collateral review where the conviction had become "final" on direct

appeal before the Supreme Court issued these decisions.  See *Humphress v. U.S.*, 398 F.3d 855

(6th Cir. 2005), *cert. denied*, - U.S. -, 126 S.Ct. 199, 163 L.Ed.2d 190 (2005); *Valentine v. U.S.*,

488 F.3d 325, 2007 WL 1387906 (6th Cir. 2007).  The decision in *Humphress* was challenged in

*Valentine* in an effort to distinguish it in situations, as in this case, where the conviction had

become final after *Apprendi* had been decided, but prior to *Blakely* and *Booker*.  The challenge

was refuted.  Although the decision in *Valentine* acknowledged that *Humphress* did "not strictly

control" in this situation, *Booker* nonetheless did not apply retroactively on collateral review in

cases where convictions had become final following *Apprendi*.  See *Valentine* at *4-5.


        Both *Humphress* and *Valentine* merged the *Blakely/Booker* consideration because neither

*Apprendi* nor *Blakely* contained any opinion on the Federal Sentencing Guidelines.  See *Blakely,*

542 U.S. at 305 n. 9, 124 S.Ct. at 2538 n. 9 ("The Federal Guidelines are not before us and we

express no opinion on them.");  *Apprendi*, 530 U.S. at 497 n. 21, 120 S.Ct. at 2366 n. 21 (same).

In those several published decisions from circuit courts which address the application of the

*Blakely's* retroactively separately, they have found that *Blakely* has no retroactive application on

collateral review of convictions which have become final before it.  See *Schardt v. Payne*, 414

4:04 CV 1130                                    16

F.3d 1035, 1036 (9th Cir. 2005); *U.S. v. Price*, 400 F.3d 844, 845-49 (10th Cir. 2005); *Varela v.*

*U.S.*, 400 F.3d 864, 867 (11th Cir. 2005). (This in addition to those cases which found no

retroactivity for purposes of a second or successive collateral review petition, e.g. *In re Dean*, 375

F.3d 1287 (11th Cir. 2004)). Thus as concluded in *Valentine, Booker's* finding of inadequate

Sixth Amendment protection under the federal sentencing guidelines represents a new rule which

is procedural rather than substantive and further does not fit into any of the two exceptions to

non-retroactive applications of new procedural rules. See *Valentine*, 2007 WL 1387906 at *2-*3.

In general, based on *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 441 (2004)

new requirements developing under the Sixth Amendment do not apply retroactively to cases on

collateral review. *Schriro*, 542 U.S. at 357-58, 124 S.Ct. at 2526-27, *Varela*, 400 F.3d at 867.

Consequently, while the amended argument under *Booker* may arguably "relate back" to the

earlier *Apprendi/Blakely* arguments, it has no retroactive application. Moreover, for the same

reasons, Isom's supplemental claim under *Blakely* lacks merit because *Blakely* does not apply

retroactively to his situation. Consequently, the motion to vacate is untimely under 28 U.S.C.

§2255 ¶6 (3).


Isom rails against cases such as *McReynolds v. U.S.* 397 F.3d 479 (7th Cir. 2005)(which

later became an integral part of the Sixth Circuit's decision in *Valentine v. U.S.*), contending that

*Booker* announced a "watershed rule" which falls under the exception to the general prohibition

against retroactivity of procedural rules for, "small set of watershed rules of criminal procedure

implicating the fundamental fairness and accuracy of the criminal proceeding." See *Schriro v.*

*Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 494 (2004). The Sixth Circuit in

4:04 CV 1130                                                17

*Humphress v. U.S.*, relied on the Supreme Court's bench trial analogy in *Schriro* to support the

conclusion that *Booker*'s rule applying *Blakely* to the federal sentencing guidelines did not create

a "watershed rule." Id., 398 F.3d 855, 863 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 199 (2005). [6]

Connected with the bench trial analogy used in *Humphress*, Isom argues that cases finding

no retroactivity of *Blakely* and *Booker* failed to consider the Fifth Amendment due process

implications from the requirement that guilt be determined beyond a reasonable doubt.  Isom

supports his position with *U.S. v. Huerta-Rodriguez*, 355 F.Supp.2d 1019 (D.Neb. 2005), which

concluded that "[w]hether the constitutional limitations on the advisory sentencing scheme, the

court finds that it can never be 'reasonable' to base any significant increase in a defendant's

sentence on facts that have not been proved beyond a reasonable doubt."  *Id.*, at 1028.

There is no question that the Supreme Court acknowledged that, "[o]ther than the fact of

prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum

must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*,

---

[6]    The Supreme Court's decision in *Schriro* is highly instructive as to whether *Booker*'s is a watershed procedural rule. --- U.S. ----, 124 S.Ct. 2519, 159 L.Ed.2d 442. *Schriro* held that *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding that provisions of Arizona's sentencing scheme that allowed a judge to find those aggravating factors authorizing the death penalty violate the Sixth Amendment) did not announce a "watershed rule[ ] of criminal procedure" that would apply retroactively to cases already final on direct review. *Schriro,* 124 S.Ct. at 2524-26. The Court framed the issue as "whether judicial factfinding so *seriously* diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Id.* at 2525 (internal citations and quotations omitted). Citing *DeStefano v. Woods,* 392 U.S. 631, 633-34, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (holding that procedural rule applying the Sixth Amendment's jury-trial guarantee to the states has no retroactive effect), the *Schriro* Court observed that "[i]f ... a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." 124 S.Ct. at 2526.

*Humphress v. U.S.* 398 F.3d at 863.

4:04 CV 1130                                         18

530 U.S. at 490.  However, the Sixth Circuit has not read *Booker* in this fashion and has not found

that *Booker* "blurred" the distinction between sentencing factors and elements of a crime as did

the Nebraska District Court.  See *Huerta-Rodriguez*, 355 F.Supp.2d at 1028.  Rather in *U.S. v.*

*Gates*, the court rejected a similar argument that *Booker* did not address Fifth Amendment due

process rights or that when there is a potential loss of liberty the government bears the burden of

proving guilt beyond a reasonable doubt."  *Id.*, 461 F.3d 703, 707 (6th Cir. 2006).  *Gates* held that

"judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard

post-*Booker* does not violate either the Fifth Amendment due process rights, or the Sixth

Amendment right to trial by jury."  *Id.*, 461 F.3d at 708.[7]  Consequently, *Isom*'s efforts to

distinguish *Humphress* by attempting to sequester a separate "watershed rule" under the Fifth, as

opposed to Sixth Amendment, is to no avail.

---

[7]        In *United States v. Coffee*, 434 F.3d 887 (6th Cir.2006), we stated that judicial fact-finding for
sentencing purposes must continue as it was conducted prior to Booker, under a preponderance of
the evidence standard. Id. at 897-98; see also *United States v. Green*, 181 Fed.Appx. 506, 508 (6th
Cir.2006) (explaining that "this court has consistently turned aside constitutional challenges to
sentences premised on preponderance of the evidence judicial fact-finding").

We find that the district court committed no Fifth or Sixth Amendment violation when it used a
preponderance of the evidence standard. Prior to *Booker*, the sentencing guidelines called for the
use of a preponderance of the evidence standard at sentencing "to meet due process requirements
and policy concerns," U.S.S.G. § 6A1.3, and this court held that the requirements of due process
were met when courts engaged in fact-finding using a preponderance of the evidence standard.
*United States v. Mayle*, 334 F.3d 552, 556 (6th Cir.2003) (noting that the "Supreme Court has held
that application of the preponderance standard at sentencing generally satisfies due process").
Following *Booker*, we stated in *United States v. Milan*, 398 F.3d 445, 455-56 (6th Cir.2005):
"Indeed, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1) which required district
courts to sentence defendants 'within the applicable Guidelines range' but recognized that the
'remainder of the [Sentencing Reform Act] functions independently.' " In *Milan*, we considered
the defendant's Sixth Amendment challenge to his sentence, but the rationale underpinning the
holding is equally applicable to *Gates's* Fifth Amendment challenge.
*Gates*, 461 F.3d at 708.

4:04 CV 1130                                    19

Isom next contends that *Booker*'s holding rendering the federal sentencing guidelines advisory is a substantive, as opposed to procedural rule, so that it has retroactive application. (Isom's Traverse p. 14-15, ECF #15).  Isom is wrong.  "*Humpress* makes clear that *Booker* announced a rule of criminal procedure, not a substantive rule."  *Lang v. U.S.*, 474 F.3d 348, 353 (6th Cir. 2007), citing *Humphress*, 398 F.3d at 860 n. 1 ("Without question this . . . is a procedural [rule].")  Accordingly, there is no basis for *Booker*'s retroactive application as Isom argues is its remedial nature.

Related to this, Isom contends that *Booker* served only to clarify the federal sentencing guidelines by making them advisory instead of mandatory.  According to this argument this change did not announce a new rule of law.  This argument runs contrary to the rationale in *Valentine v. U.S.* and other cases cited therein, that *Booker* was not mere clarification of contemporaneous law.  See *Valentine*, 488 F.3d at 329-40

Finally, Isom contends that the sentencing court's failure to apply *Booker* was a structural error entitling him to plain error review.  For this proposition Isom erroneously relies on *U.S. v. Barnett*, 398 F.3d 516 (6th Cir. 2005), a case on appeal, not collateral review.  In *Barnett, Booker* did apply because that defendant's conviction had not become "final" prior to *Booker.*  See *Barnett*, 398 F.3d at 523-24. Consequently, Isom's reliance on *Booker* in his reply brief cannot salvage his arguments. No right or application under *Blakely* or *Booker* has been made retroactive to cases on collateral review to reset the "1-year period" under §2255 ¶6 (3).

4:04 CV 1130                                      20

In summation, there is no merit to Isom's argument under *Apprendi* because his sentence

was less than the statutory maximum sentence of life imprisonment, and his *Blakely/Booker*

arguments fail because these principles which were developed subsequently have no retroactive

effect.  Attention now must be given to Isom's remaining original six grounds.


*Original Grounds 1 & 4. Counsel's effectiveness - Sufficiency of the evidence:*

Isom's motion to withdraw his original pleadings has been denied and accordingly, the

remainder of Isom's six original grounds will be addressed.  Isom believes that he was convicted

due to counsel's failure to rebut the government's case against him.  He begins stating that the

court found that the negotiations between the informant, Ms. Newsome, and himself evidenced a

substantial step in furtherance of the conspiracy and that his conviction was a product of false,

twisted and unethical claims presented by the government.  The government counters that the

challenge to the sufficiency of the evidence to support a conviction is not cognizable under

§2255.  See *United States v. Osborne*, 415 F.2d 1021, 1024 (6th Cir. 1969).  Furthermore, the

government points out that Isom has already challenged the sufficiency of the evidence

supporting his conviction in his direct appeal.  Isom may recall that the Sixth Circuit applying the

standard under *Jackson v. Virginia*, 443 U.S. 307 (1979) found that the sufficient evidence was

presented because Isom had committed a substantial step towards a crime of possession of

engaging in active negotiations to purchase cocaine during July 24 and 25, 2001.  *Isom*, 72 Fed.

Appx. at 374.

4:04 CV 1130                                        21

In *Strickland v. Washington*, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that in order to establish ineffective assistance of trial counsel, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense." *Id.*, 466 U.S. 686, 686-87; *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*.)  Elaborating further, the Supreme Court explained: "[t]he proper measure of attorney performance remains simply reasonableness under prevailing norms, "(*Id.* at 688), and review is conducted under the principle that "a strong presumption of counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  While the prior outright challenge to sufficiency of the evidence does not equate with the current argument of ineffective assistance of defense counsel, Isom fails to support his claim with anything more than a denial of the accusations of conspiracy to engage in drug-trafficking.

Next, Isom's fourth ground based on the alleged failure to establish the interstate character of the crime, is a frivolous argument.  "Drug trafficking is an 'economic enterprise' that substantially affects interstate commerce in numerous ways." *Gilbert v. U.S.*, 165 F.3d 470, 474 (6th Cir. 1999), quoting *U.S. v. Tucker*, 90 F.3d 1135, 1140 (6th Cir. 1996).  Defense counsel's performance as measured under *Strickland v. Washington*, cannot be faulted for failing to raise a "wholly frivolous" arguments. *Ransom v. U.S.*, 43 F.3d 1472 (Table 1994); *U.S. v. Westline*, 21 F.3d 429 n. 9 (Table, 1994).

4:04 CV 1130                                    22

2. *Two level sentence enhancement for obstruction of justice.*

Isom again complains that the district court erred by imposing a two-level sentence enhancement under U.S.S.G. §3.C1.1 for obstruction of justice.  This was challenged on appeal and the Sixth Circuit concluded that the enhancement was proper for Isom's willfully providing of materially false information to the court.  See *Isom*, 72 Fed. Appx. at 375.  As the government points out, a §2255 motion "may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances."  *DuPont v. U.S.*, 76 F.3d 108, 110 (6th Cir. 1996); *U.S. v. Brown*, 62 F.3d 1418 (6th Cir. 1995).  Isom provides no evidence that "highly exceptional circumstances" exist in this matter to warrant its relitigation.


3. *Counsel's failure to object to consecutive sentencing.*

Isom asserts that counsel made false promises that he would receive concurrent sentencing (Isom's Memorandum at 7).  The government responds with apparent concern over this allegation.  However this alleged "false promise" was given when Isom was tried before the court.  This is not a situation governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), where the prisoner had entered plea negotiations.  The circumstances here present no *quid pro quo* plea negotiation where Isom agreed to anything in return for unfulfilled promise of concurrent sentencing.

4:04 CV 1130                                   23

The issue of consecutive sentences was addressed by the Sixth Circuit as a matter of plain error due to trial counsel's failure to object.  *Isom*, 72 Fed. Appx. at 375-76.  The Sixth Circuit explained:

> Although a district court may not impose a federal sentence 'to be served consecutively to a not-yet imposed state sentence,' see *United States v. Quintero*, 157 F.3d 1038, 1039 (6th Cir. 1998), Isom's PSR indicated that his original state sentence was reimposed on August 6, 2002, one month before his federal sentencing hearing.  Isom . . . does not now allege that reimposition of the state sentence occurred on any other date, despite his conclusory allegation that the state sentence 'was not yet reimposed.'

*Isom*, 72 Fed. Appx. at 376.   Again counsel's objection in this matter would be "wholly frivolous" because the state sentence had been reimposed prior to federal sentencing.  Further, a challenge to counsel's effectiveness depends not simply on deficient performance but also on *Strickland's* companion requirement of prejudice.  *Strickland*, 466 U.S. at 688.  The prejudice prong of *Strickland* requires a demonstration that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, 466 U.S. at 687-88.  Isom has failed to establish that even if counsel had objected that the outcome would have been different and that he would have received concurrent as opposed to consecutive sentences.


5. *Counsel's ineffectiveness for failing to challenge inaccuracies in the affidavit for search warrant.*

Isom complains that counsel's failure to challenge certain unspecified inaccuracies in the affidavit in support of a search warrant constituted deficient performance.  However, there was no search warrant in this case much less an affidavit.  The search was conducted pursuant to consent

4:04 CV 1130                                      24

and the money that was seized from Ison's car, not his home.  Consequently, Isom has shown

neither deficient performance nor resulting prejudice.


6. *Counsel's failure to raise Batson challenge during jury selection.*

Isom raised this claim under *Batson v. Kentucky*, 476 U.S. 79 (1996) concerning a

peremptory challenge to a minority jury during the jury selection process.  Isom, however,

apparently forgot that he had a bench trial.  Isom apologizes for bringing these frivolous grounds

in his subsequent motion to amend and substitute.  (See Motion to withdraw pleadings, ECF #13).


*Unnumbered grounds - ineffective assistance of counsel during plea bargaining and lack of*

*judicial consideration of plea agreement under Crim. Rule 11(c).*

This again is another frivolous claim brought by the jailhouse lawyer in a supplemental

memorandum.  The government addresses it by simply pointing out that there was no plea offer

from the government in this matter, hence no plea bargaining, and no plea agreement for the

court's consideration.


*Unnumbered grounds- counsel's effectiveness.*

The government succinctly and correctly refutes Isom's ridiculous allegations of being

coerced into a bench trial, not testifying at trial (apparently Isom forgot he had perjured himself

See *U.S. v. Isom*, 72 Fed Appx. 372, 374-75 (6th Cir. 2003)), and complaints over cross-

examination in its answer.

4:04 CV 1130                                   25

### *CONCLUSION AND RECOMMENDATION*

Accordingly, there is no merit to Isom's original six grounds nor his supplemental grounds concerning the nonexistent plea agreement and retroactive application of *Booker* and *Blakely.* There was no violation of Sixth Amendment principles as expressed in *Apprendi.*   Based on the foregoing it is recommended that Isom's motion to vacate set aside or correct sentence be denied without evidentiary hearing.   Further, it is recommended that the court certify pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith and that there is no basis on which to issue a certificate of appealability. See 28 U.S.C. §2253(c); Fed. R. App. P. 22(b).


                                    <u>          s/James S. Gallas            </u>
                                    United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated July 17, 2007